ROBERT L. BLAND, Judge,
dissenting.
I cannot agree with the determination made of these claims. The claims are not, as I view them, claims for which awards may properly be made under the provisions of the act creating the court of claims. They are not, according to my interpretation, claims which the state of West Virginia as a sovereign commonwealth should, in equity and good conscience, discharge and pay.
Since the court of claims is in its formative period it is especially important to guard carefully against the creation of dangerous precedents in the matter of making awards. We have no power or authority to make an award that is not authorized by the court act.
It is impossible, I think, to reconcile the awards made in these cases with the cause of action set forth in the petitions filed by claimants. These petitions do not state facts sufficient to show that the state of West Virginia is liable to pay the claims. Each petition on its face fails to disclose a cause of action against the state. The petitions are identical in form in the four cases except as to hours of labor performed and amounts of claims. I quote from the petition of claimant Dewey Adkins:
“Your petitioner, Dewey Adkins, of Sias, West Virginia, respectfully represents that he was duly and legally employed by the works progress administration to furnish and operate a truck in connection with and in furtherance of certain road work on Upper Mud River Road known and designated as W. P. A. Project No. 76, in Lincoln County, West Virginia, which said road- work primarily consisted of laying a rock base road about five (5) miles in length; that in line with and in furtherance of said employment your petitioner between August 24, 1937, to September 8, 1937, furnished and operated a truck for 26 hours at $1.75 per hour, making a total of Forty-five Dollars and Fifty cents ($45.50); that your petitioner between September 9, 1937 to September 23, 1937, furnished and operated a truck for 66 hours at *291 $1.75 per hour, making a total of One Hundred and Fifteen Dollars and Fifty Cents ($115.50); that your petitioner between September 24, 1937 to October 8, 1937, furnished and operated a truck for 39 hours at $1.75 per hour, making a total of Sixty-Eight Dollars and Twenty-five Cents ($68.25); that your petitioner between October 24, 1937 to November 8, 1937, furnished and operated a truck for 66 hours at $1.75 per hour, making a total of One Hundred and Fifteen Dollars and Fifty Cents ($115.50); that your petitioner between November 9, 1937 to November 23, 1937, furnished and operated a truck for 87 hours at $1.75 per hour, making a total of One Hundred Fifty-Two Dollars and Twenty-five Cents ($152.25); that your petitioner between November 24, 1937 to December 8, 1937, furnished and operated a truck for 77 hours at $1.75 per hour, making a total of One Hundred and Thirty-four Dollars and Seventy-five Cents ($134.75); that your petitioner between December 9, 1937 to December 23, 1937, furnished and operated a truck for 28 hours at $1.75 per hour, making a total of Forty-Nine Dollars ($49.00); that the total amount due your petitioner for labor and services as above detailed is Six Hundred Eighty Dollars and Seventy-five Cents ($880.75).
“Your petitioner further represents that he was not paid for said work, or any part thereof, and that the same is due and unpaid and has been due your petitioner from the respective dates above set forth, and your petitioner is entitled to the respective amounts above set forth, with legal interest thereon from the respective dates aforesaid.
“Your petitioner further represents that at the time he was doing said work he was informed and believed that there was available money to pay for the same, but after said work was done he was informed by the W. P. A. authorities that there were not sufficient funds and in fact no fund to pay the amount due your petitioner and that all the available money had been expended in the meantime.
“Your petitioner further represents that the detailed account of your petitioner was duly, legally and accurately kept on forms furnished by the State Road Commission of West Virginia; that said accounts were duly approved on said blanks by Elza B. Adkins, *292 Superintendent of W. P. A. Project No. 76, and by Wilburn Mullins, Timekeeper, and that said accounts were duly sworn to by your petitioner; and your petitioner therefore prays that his petition may be duly filed, that the proper State Department concerned in this petition be duly notified, and that the claim of your petitioner may be properly docketed for a hearing and that final hearing thereon may be had, and that the claim of your petitioner may be duly and legally adjudged him, together with a legal rate of interest thereon, and that your petitioner be granted full and adequate relief in the premises, and thus in duty bound he will ever pray, etc.”
It is obvious that the petition on its face fails to disclose a cause of action against the state. On the contrary it specifically alleges a cause of action against the Federal Government. Under the averments of the petition the claim presented thereby is not prima, facia within the jurisdiction of the court of claims. The court’s power to make an award is limited to the jurisdiction conferred upon it by the Legislature. An award, in the absence of jurisdiction to make it, is, I think, abortive and of no legal effect.
But notwithstanding the failure of the petitions to state causes of action against the state the claims were investigated and heard on their merits under the regular procedure of the court act. I do not think that the evidence offered upon the investigation and hearing of the claims warrants the findings of fact set forth in the majority opinion or establishes the right of the claimants to the awards which have been made in their favor. It is quite as essential to do justice to the state as it is to do justice to claimants. As pointed out in the opinion the claims are for work and services performed by the claimants and for use of their four trucks on works progress administration project No. 76, upper Mud river road, in Lincoln county, West Virginia. This project is shown to have been sponsored by the state road commission of West Virginia. Under the terms of the sponsorship the road commissioner was obligated to furnish from twenty per cent to twenty-five per cent of the total cost of the project. This contribution on the part of the *293 road commission was not to be paid in cash, but by the use of state road equipment with operators, such as trucks, road graders, rollers, power shovels, etc. In order for persons to qualify for employment on the project it was necessary for '¿hem to first obtain “purchase orders.” Truck hire was in all cases paid for from the works progress administration fund known as “other funds.” Purchase orders were not granted by the state. The issuance of purchase orders was a Federal Government commitment, not a state commitment.
It appears from the evidence that in the vicinity of the Mud river road project there is a settlement of Adkins. They do not live far apart but reside along the road. The Mud river road is the road that is traveled by them in order to go from the creek to any other part of the country. Seemingly this family is of importance and influence in that section of Lincoln county. It is shown that Caudle Adkins was the works progress administration supervisor for Lincoln county. He had general supervision of works progress administration projects throughout the county. Elza B. Adkins was the works progress administration project superintendent. He had the closest contact with the project because his work was confined entirely to that project. Elza B. Adkins is a brother of the Adkins claimants. It is not strange, therefore, that after the beginning of work on the project Dewey Adkins, Joel H. Adkins, G. B. Adkins, and Walter Adkins and D. B. Wilson, partners, obtained “purchase orders” for the use of their trucks on the Mud river road project. The evidence would indicate that they had regular and lucrative employment. There came a time, however, in the fall of 1937 when equipment on this project became “top heavy.” At that time there were perhaps seventy-five persons employed as laborers on the project. At times the number employed would reach one hundred and twenty-five. The project was in good shape and running along satisfactorily except that it was “top heavy” with works progress administration equipment. Works progress administration truck rental expired August 16, 1937. Roller rental expired July 20, 1937. There was, therefore, no money available for the hire of this character of equipment. F. A. Wyant, *294 w. p. a. director of division of operations, addressed a letter from Charleston under date of August 27, 1937, to Abe For-sythe, works progress administration branch manager, at Huntington, advising him that labor would soon be at a standstill until additional equipment should be provided. Forsythe addressed a communication under date of August 28, 1937, to W. Frank Harrison, acting works progress engineer, at Huntington, directing him to investigate the equipment shortage on the Mud river road project, and instructed him that if his findings should indicate that more equipment was needed and it would be impossible for the state road commission to supply it, that work on this project should be discontinued until such time as proper equipment should be furnished.
It may be observed at this point that the works progress administration was responsible for the top heavy condition of equipment on the project, not the failure of the state road commission to furnish equipment for which it was obligated. The Federal Government was paying more money for equipment than it should expend for that purpose. So long as the resources known as “other funds” were exhausted no purchase orders could be issued for truck hire. Unless the state road commission should come to the relief of the works progress administration and supply other and additional trucks, than those for which it was obligated, to take the place of the trucks that the works progress administration could not employ because it was without funds to pay for them, the work on the project would have to be suspended.
W. Frank Harrison, district engineer in charge of five counties for the works progress administration, testified that after the receipt of the Wyant letter he, in company with one John McGee, who was connected with the program in Lincoln county, went to the project site and discussed the situation with Elza Adkins, w. p. a. superintendent of the project. It was at this time that Adkins informed Harrison that claimants would use their trucks which they had been using under their employment hy the works progress administration and for which use up to that time they had received purchase orders. There was *295 an agreement between Harrison and Adkins, both w. p. a. employees, that under this arrangement the works progress administration would furnish claimants with oil and gas. Neither the state nor the state road commission was a party to this arrangement between Harrison and Adkins, nor shown by the evidence to have had any knowledge of it, and would not be bound by it.
It is disclosed by the evidence that after the arrangement concluded between W. Frank Harrison, District Engineer, and Elza B. Adkins, w. p. a. County Supervisor, claimants did work on the project with their trucks and that oil and gas were furnished to them by the works progress administration. Reports of their trucks and labor were regularly made to the works progress administration on form No. 710. This is a form used for the purpose of showing contributions to the project by the sponsor of the project or other persons. It is a form used by the accounting division of the works progress administration in order to keep its records straight. On these reports the time of claimants was shown as “Contributions by other than sponsor.”
After this form 710 showing contributions by claimants had been received at the Huntington office of the works progress administration, inquiry was made of J. Scott Lunsford, area engineer, for an explanation of the reason for claimants’ time being reported as a contribution to the project. Under date of October 11, 1937, Mr. Lunsford addressed a letter to W. T. Farrell, supervisory clerk of the works progress administration, at Huntington, saying:
“These are ‘Other than Sponsor’ contributions. It happens in this case that a number of truck owners not only are unselfishly public spirited but wish to show their appreciation for past favors extended to the degree where they will contribute their personal time and the use of their equipment toward the success of our program. In this instance SRC, having failed to provide equipment on the project, and ‘Other Cost’ funds having been exhausted, these private truck owners volunteered their services gratis to bring the job to completion.”
*296 On the hearing Mr. Lunsford testified that he visited the project and asked Caudle Adkins, w. p. a. county superintendent, what interest claimants had in the project that would induce them to offer the services of their trucks to the project or just what their motive in doing so was; and that Mr. Adkins replied that claimants lived up the river from or on the project site and were therefore interested in the continuation or construction of the road for several reasons; that they wanted an outlet and the paving finished from their homes; that they were public spirited and wanted to see the work continued to prevent unemployment, and realized that by their demonstration of their willingness to furnish their trucks gratis they would be probably more readily favored by future purchase orders. Mr. Lunsford further testified: “I do recall that due to the unusual nature of their offer I explained to these men at some length that there could be no misunderstanding about the matter of pay for the trucks as there was no money on the project to pay for the truck use. In other words, I wanted to avoid any possible misunderstanding and these men acknowledged or rather expressed their understanding of the conditions on which their trucks would work and they said that they were so anxious to see the project work continued without shutdown or delay they would volunteer the use of their trucks, hoping that some day some arrangement would be made whereby funds could be procured for truck purposes.”
The work on the project for which the claims are made ended in March 1938. The evidence does not show that from that time until April 2, 1942, when they were filed in the court of claims, that these claims were regarded as claims against the state of West Virginia.
I do not see wherein the evidence shows that the state or the state road commission failed to furnish the full complement of equipment for which it was obligated under the terms of its sponsorship of the project. It is not shown what the total cost of the project was, and there is nothing in the record to show that the state did not furnish from twenty to twenty-five per cent of the equipment used. The testimony of W. Frank *297 Harrison, works progress administration district engineer, very definitely shows that the project was “top heavy” on account of works progress administration equipment. The actual reason for the failure of claimants to receive further purchase orders for the use of their trucks on the project was that the money applicable to the payment of truck hire was exhausted.
It does appear from the evidence that after the completion of the project claimants obtained purchase orders for employment on other projects in Lincoln county. This is what they bargained for and gambled upon obtaining.
Elza B. Adkins, the project superintendent, who seems from the evidence to have been the spokesman for the claimants in the matter of furnishing their trucks, and who evidently made arrangements with them to do so, was not produced by claimants to testify on their behalf and in support of their claims.
If the state road commission furnished from twenty to twenty-five per cent of the equipment used on the project, and the evidence does not show that it failed to do so, there would be no reason why the state should pay the awards made in favor of these claimants in addition to its agreed contribution to the project.
The claims are distinctly claims against the Federal Government and not against the state of West Virginia.